1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12  PATRICK VARGAS,                    No. 2:22-cv-01454 WBS CSK

13              Plaintiff,

14       v.                           MEMORANDUM AND ORDER RE:
                                      DEFENDANTS' MOTIONS FOR
15  CITY OF TRACY; SOUTH SAN          SUMMARY JUDGMENT
    JOAQUIN COUNTY FIRE
16  AUTHORITY; RANDALL BRADLEY,
    in his individual and
17  official capacities; and DOES 1
    through 20, inclusive,
18
              Defendants.
19

20
                           ----oo0oo----
21

22          Plaintiff Patrick Vargas brought this action under 42

23  U.S.C. § 1983 and California state law against defendants City of

24  Tracy ("City"), South San Joaquin County Fire Authority ("SSJC

25  Fire Authority" or "Fire Authority"), and Randall Bradley.

26  (Third Am. Compl. ("TAC") (Docket No. 37).)  Defendants move for

27  summary judgment.  (Docket Nos. 99-100 ("City MSJ"), No. 101

28  ("Bradley MSJ"), No. 102 ("Fire Authority MSJ").)

                                  1

1  I.   Facts

2          Plaintiff began working as a firefighter for the Tracy

3  Rural Fire Department in 1994.  (See Patrick Vargas Dep. at

4  36:17-37:1.)[1]  In 1999, the City of Tracy Fire Department and the

5  Tracy Rural Fire Department merged to form a "joint powers

6  authority" called the South County Fire Authority.[2]  (Patrick

7  Vargas Dep. at 37:9-14; Bradley Dep. at 33:18-22, 46:22-23.)  As

8  a result of this merger, plaintiff became an employee of the City

9  of Tracy.  (Patrick Vargas Dep. at 36:19-37:3.)  Plaintiff was

10  promoted to interim Division Chief in 2015, to Battalion Chief in

11  2017, and to Division Chief later in 2017, a position he held

12  until he was terminated in 2022.  (Id. at 21:17-22.)

13          Defendant Bradley was hired as Fire Chief for the City

14  of Tracy in December 2015 and then served as interim and

15  permanent City Manager for the City from approximately October

16  2017 to January 2019.  (Bradley Dep. at 49:3-14, 70:9-13, 79:19-

17  21, 82:1-10.)  During this time period, Bradley advocated for

18  restructuring the South County Fire Authority into a "strong"

19  joint powers authority independent of the City, and ultimately

20  convinced the City Council to adopt this proposal (hereinafter

21  "the Plan").  (See Bradley Dep. at 55:6-61:14, 67:5-12.)

22          Pursuant to the Plan, the existing South County Fire

23  Authority was dissolved and a new joint powers authority

24  independent of the City -- defendant South San Joaquin County

25          [1]   The depositions and accompanying exhibits cited
26  throughout this Order were lodged with the court.

27          [2]   A joint powers authority is a partnership between two
   public agencies to either jointly manage an endeavor or form a
28  new public agency.  (Bradley Dep. at 33:23-34:6.)

1  Fire Authority ("SSJC Fire Authority" or "Fire Authority") -- was

2  established in 2018.  (Bradley Dep. at 80:23-83:2.)  Bradley left

3  his position as City Manager in 2019 to serve as Fire Chief of

4  the SSJC Fire Authority.  (See Ex. 6 to Bradley Dep.)  From the

5  establishment of the SSJC Fire Authority to January 1, 2022, the

6  City of Tracy remained the employer of record for plaintiff,

7  Bradley, and other SSJC Fire Authority employees.  (See id. at

8  82:1-17; Murdaugh Dep. at 27:13-28:14.)  On January 2, 2022, the

9  SSJC Fire Authority became the employer of record.  (See id.)

10      Plaintiff's wife, Veronica Vargas, was a member of the

11  Tracy City Council from 2014 to 2022.  (See Veronica Vargas Dep.

12  at 30:20-23, 95:15-96:6.)  In her role as city councilor, she was

13  involved in the discussions over restructuring the joint powers

14  authority, which began during Bradley's tenure as City Manager.

15  (See id. at 60:13-25.)  Ms. Vargas expressed concern over the

16  Plan's feasibility and was unsatisfied with the answers she was

17  given concerning it.  (Id. at 70:18-71:10, 73:16-74:7, 75:17-

18  78:6, 100:24-103:4.)  Ms. Vargas continued to be involved in

19  implementation of the Plan through her role in the City Council

20  as late as September 1, 2020.  (See Pl.'s Ex. A (Docket No. 104-8

21  at 5-13) at 5.)

22      Plaintiff and his wife largely avoided discussing the

23  Plan with each other to avoid causing tension in their marriage.

24  (See Patrick Vargas Dep. at 108:23-109:12, 138:6-142:23; Veronica

25  Vargas Dep. at 230:9-232:12.)  Despite this, plaintiff contends,

26  Bradley confronted plaintiff about his purported discussion of

27  the Plan with Ms. Vargas in June or July 2019, telling plaintiff

28  that he was in a "precarious position" and was being

1  "marginaliz[ed]" because of Ms. Vargas.  (See Patrick Vargas Dep.
2  at 105:20-106:9.)

3      Bradley brought allegations of timecard fraud to Human
4  Resources Director Kimberly Murdaugh on September 15, 2020 and
5  third-party investigators ultimately found the allegation
6  unsupported on March 23, 2021.  (Murdaugh Dep. at 75:12-76:5.)
7  On March 31, 2021, Bradley contacted Ms. Murdaugh and implored
8  her to further investigate plaintiff, and harassment allegations
9  against plaintiff surfaced on April 7, 2021, prompting a second
10 investigation during which Bradley placed plaintiff on paid
11 administrative leave.  (See Docket No. 104-2 at 288; Docket No.
12 104-4 at 63-67; Ex. 20 to Bradley Dep.; Murdaugh Dep. at 150:9-
13 23, 179:10-14.)  Bradley allegedly pushed to expand the scope of
14 the investigation, which concerned Ms. Murdaugh because there
15 were no other specific allegations of misconduct and Bradley's
16 suggested course of action did not align with existing City
17 policies.  (Murdaugh Dep. at 133:13-134:16, 136:18-137:4.)

18     The harassment investigation -- which, according to Ms.
19 Murdaugh, ultimately exceeded the original investigatory scope
20 she established -- concluded in August 2021 and sustained
21 allegations of harassment and misconduct, but City officials had
22 concerns about the integrity of the findings and commissioned an
23 additional investigation into the harassment investigation.  (See
24 Exs. 18, 20 to Murdaugh Dep.; Murdaugh Dep. at 132:18-134:22,
25 167:5-17, 180:16-181:4, 183:20-21, 195:24-197:20, 199:6-10.)
26 This additional investigation was completed in December 2021 and
27 found that the harassment investigation used unreliable
28 methodologies and was biased because "Bradley's participation in

1  the investigation as both the decisionmaker and a witness

2  evidences the investigation was not conducted in an impartial

3  manner." (See Ex. 22 to Murdaugh Dep.) City officials concluded

4  that the harassment investigation did not provide a basis to

5  terminate plaintiff and directed that plaintiff be removed from

6  administrative leave and return to work, but Bradley terminated

7  plaintiff on January 12, 2022. (See Ex. 21 to Murdaugh Dep.;

8  Murdaugh Dep. at 203:22-207:25; Bradley Dep. at 386:10-24,

9  395:13-396:24.)

10  II.  Discussion

11        Plaintiff brings three claims under § 1983: the first

12  claim alleging First Amendment retaliation based on speech, the

13  second claim alleging First Amendment retaliation based on

14  association, and the third claim alleging deprivation of

15  procedural due process. (TAC ¶¶ 127-52.) Plaintiff also brings

16  two state law claims: the fourth claim alleging violation of the

17  California Firefighters Procedural Bill of Rights Act, Cal. Gov't

18  Code § 3252 et seq.; and the fifth claim alleging violation of

19  California Labor Code § 98.6. (Id. ¶¶ 153-74.)

20        On their motions for summary judgment, defendants bear

21  the burden of persuasion to show that there is no genuine dispute

22  of material fact on plaintiff's claims. See Nissan Fire & Marine

23  Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir.

24  2000).

25        A.   Bradley and the SSJC Fire Authority

26        1.   Section 1983

27             a.   *Monell* Liability

28        Plaintiff brings all three constitutional claims

5

against the SSJC Fire Authority, which is a municipal entity.
Because § 1983 does not provide for vicarious liability, local
governments "may not be sued under § 1983 for an injury inflicted
solely by its employees or agents."  Monell v. Dep't of Soc.
Servs. of N.Y., 436 U.S. 658, 693 (1978).  "Instead, it is when
execution of a government's policy or custom, whether made by its
lawmakers or by those whose edicts or acts may fairly be said to
represent official policy, inflicts the injury that the
government as an entity is responsible under § 1983."  Id.

Plaintiff bases his claims against the SSJC Fire
Authority on the theory that Bradley was a "final policymaker."
"[W]here action is directed by those who establish governmental
policy, the municipality is equally responsible whether that
action is to be taken only once or to be taken repeatedly."
Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986).

In support of its argument that Bradley was not a final
policymaker, the SSJC Fire Authority cites only Bradley's
Employment Agreement, which states that Bradley was under the
authority of the Fire Authority's Board.  However, the cited
document undercuts rather than supports the Fire Authority's
position, as it states that Bradley "[i]mplements and oversees
all aspects of personnel and labor relations with [Fire]
Authority employees, including personnel management, discipline,
handling grievances, negotiating labor agreements, and meeting
and conferring with the [Fire] Authority's recognized bargaining
units."  (Ex. 6 to Bradley Dep. at 10.)  That document gives no
indication that Bradley's authority over employment matters was
subject to Board control or approval.  (See generally id.)

6

1        The absence of Board oversight tends to be supported by

2  the evidence before the court concerning plaintiff's termination,

3  which Bradley apparently decided upon and effectuated without any

4  Board input.  (See Bradley Dep. at 393:11-22, 395:13-398:3.)

5  Accordingly, because there is a genuine dispute of material fact

6  as to whether Bradley possessed final policymaking authority over

7  employment decisions, the SSJC Fire Authority's motion for

8  summary judgment will not be granted based upon Monell.

9            b.   First Amendment Retaliation Based on Speech

10       Plaintiff contends that Bradley, on behalf of the Fire

11  Authority, took adverse employment actions against him based on

12  Bradley's perception that plaintiff spoke negatively of the Plan

13  to his wife, Ms. Vargas, who was a city councilor and was

14  involved in the adoption and implementation of the Plan.

15  Regardless of whether plaintiff actually spoke to his wife about

16  the Plan, a retaliation claim based on "perceived speech" --

17  i.e., speech that the plaintiff was incorrectly thought to have

18  made -- is cognizable under the First Amendment.  See Heffernan

19  v. City of Paterson, 578 U.S. 266, 268 (2016) (government

20  employee could maintain a First Amendment retaliation claim where

21  he was demoted because "the official believed, but incorrectly

22  believed, that the employee had supported a particular candidate

23  for mayor") (emphasis in original); DeCrane v. Eckart, 12 F.4th

24  586, 594 (6th Cir. 2021) (recognizing First Amendment retaliation

25  claim premised on erroneously "perceived speech" based on

26  Heffernan).

27       "'[T]he First Amendment prohibits government officials

28  from subjecting individuals to retaliatory actions after the fact

for having engaged in protected speech.'" <u>Adams v. County of Sacramento</u>, 116 F.4th 1004, 1010 (9th Cir. 2024) (quoting <u>Houston Cmty. Coll. Sys. v. Wilson</u>, 595 U.S. 468, 474 (2022)).  Under the test established by <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968), "it is the plaintiff's burden to establish that (1) [he] spoke on a matter of public concern; (2) [he] spoke as a private citizen rather than a public employee; and (3) the relevant speech was a substantial or motivating factor in the adverse employment action." <u>Adams</u>, 116 F.4th at 1010 (cleaned up).[3]  "If a plaintiff establishes such a prima facie case, the burden shifts to the government to demonstrate that (4) it had an adequate justification for treating the employee differently than other members of the general public; or (5) it would have taken the adverse employment action even absent the protected speech." <u>Id.</u> (cleaned up).

To demonstrate that retaliation was a "substantial or motivating factor behind an adverse employment action," a plaintiff can "(1) introduce evidence that the speech and adverse action were proximate in time, such that a jury could infer that the action took place in retaliation for the speech; (2) introduce evidence that the employer expressed opposition to the speech; or (3) introduce evidence that the proffered explanations for the adverse action were false and pretextual." <u>Anthoine v. N. Cent. Ctys. Consortium</u>, 605 F.3d 740, 750 (9th Cir. 2010). "As with proof of motive in other contexts, this element of a First Amendment retaliation suit . . . involves questions of fact

---

[3]    Defendants do not meaningfully address the first or second <u>Pickering</u> factors.

1    that normally should be left for trial." Ulrich v. City & County
2    of San Francisco, 308 F.3d 968, 979–80 (9th Cir. 2002) (internal
3    citations omitted).

4          Here, plaintiff has presented sufficient evidence of
5    retaliatory motive to survive summary judgment.  As laid out in
6    detail above, there is evidence indicating that Bradley expressed
7    opposition to plaintiff's perceived communication with Ms. Vargas
8    concerning the Plan (see Patrick Vargas Dep. at 105:20-106:9) and
9    that there was a close proximity in time between Ms. Vargas'
10   actions on the City Council regarding the Plan and the chain of
11   events beginning with Bradley's allegation of timecard fraud (see
12   Pl.'s Ex. A at 5; Murdaugh Dep. at 75:12-76:5).

13         There is also evidence tending to show that Bradley's
14   proffered reason for plaintiff's termination was pretextual.
15   After an independent investigation found that the harassment
16   investigation into plaintiff was biased by Bradley's involvement,
17   City officials concluded that the harassment investigation's
18   findings did not warrant termination and instructed Bradley to
19   remove plaintiff from administrative leave, but Bradley
20   terminated plaintiff regardless.  (See Murdaugh Dep. at 203:22-
21   207:25, 213:19-214:23; Ex. 22 to Murdaugh Dep. at 3; Bradley Dep.
22   at 386:10-387:16, 395:13-396:24.)  This evidence plainly
23   establishes a genuine dispute of material fact as to whether
24   plaintiff's termination was based on Bradley's retaliatory animus
25   for plaintiff's perceived speech and connection with Ms. Vargas.
26   See Anthoine, 605 F.3d at 750.

27         Further, Bradley and the Fire Authority have not
28   pointed to any evidence that taking adverse employment action in

                                    9

1    response to plaintiff's speech served legitimate operational

2    purposes.  See Moser v. Las Vegas Metro. Police Dep't, 984 F.3d

3    900, 908-09 (9th Cir. 2021) ("mere speculation that an employee's

4    speech will cause disruption" was insufficient to demonstrate the

5    government had a legitimate interest under Pickering).

6         Accordingly, Bradley and the SSJC Fire Authority's

7    motions for summary judgment on the first claim for First

8    Amendment retaliation based on plaintiff's speech must be denied.

9                 c.   First Amendment Retaliation Based on
                       Association
10

11        Plaintiff alleges that Bradley and the SSJC Fire

12   Authority retaliated against him based on his association with

13   his wife.  Though the Ninth Circuit has not squarely addressed

14   this type of claim, the Second Circuit has held that "a spouse's

15   claim that adverse action was taken solely against that spouse in

16   retaliation for conduct of the other spouse should be analyzed as

17   a claimed violation of a First Amendment right of intimate

18   association."  See Adler v. Pataki, 185 F.3d 35, 44 (2d Cir.

19   1999); see also Freeman v. County of Riverside, No. 18-cv-2171

20   JFW KKX, 2019 WL 7905733, at *6 (C.D. Cal. Apr. 5, 2019) (quoting

21   Lewis v. Eufaula City Bd. of Educ., 922 F. Supp. 2d 1291, 1302

22   (M.D. Ala. 2012)) ("[T]he First Amendment may also be violated

23   where the speech that invoked the government's retaliatory

24   response was not made by the plaintiff herself, but rather by a

25   person in a close relationship with the plaintiff, and the

26   government retaliated against the plaintiff for her perceived

27   association with the other person and that person's speech.");

28   Isakhanova v. Muniz, No. 15-cv-03759 TEH, 2016 WL 1640649, at *4

1   (N.D. Cal. Apr. 26, 2016) (same).

2        This holding aligns with Ninth Circuit and Supreme

3   Court case law explaining that a claim for "expressive

4   association" via a close family relationship such as marriage is

5   cognizable under the First Amendment.  See, e.g., Board of Dir.

6   v. Rotary Club, 481 U.S. 537, 545 (1987); Erotic Serv. Provider

7   Legal Educ. & Rsch. Project v. Gascon, 880 F.3d 450, 458 (9th

8   Cir.), amended, 881 F.3d 792 (9th Cir. 2018); Lee v. City of Los

9   Angeles, 250 F.3d 668, 685 (9th Cir. 2001); IDK, Inc. v. Clark

10  County, 836 F.2d 1185, 1194 (9th Cir. 1988).

11       Bradley and the Fire Authority's arguments concerning

12  this claim are essentially the same as those discussed above with

13  respect to the First Amendment retaliation claim based on

14  plaintiff's speech -- i.e., the third, fourth, and fifth elements

15  of the Pickering analysis.  (See Fire Authority Reply at 10-12;

16  Bradley Reply at 8-12.)  See also Adler, 185 F.3d at 44 (applying

17  Pickering test to First Amendment retaliation claim based on

18  association with spouse).  Based on the evidence discussed above,

19  there are genuine disputes of material fact concerning whether

20  Bradley took retaliatory employment actions in response to

21  plaintiff's association with his wife, whether those adverse

22  actions were otherwise justified, and whether those adverse

23  actions would have been taken absent retaliatory intent.

24  Accordingly, Bradley and the SSJC Fire Authority's motions for

25  summary judgment must also be denied on the second claim for

26  First Amendment retaliation based on association.

27            d.   Procedural Due Process

28       Plaintiff does not oppose defendants' request for

11

1    summary judgment on the procedural due process claim.  (See

2    Bradley Opp'n (Docket No. 105) at 32; Fire Authority Opp'n

3    (Docket No. 106) at 31-32.)  Accordingly, Bradley and the SSJC

4    Fire Authority's motions for summary judgment will be granted as

5    to the third claim for deprivation of procedural due process.

6                     e.    Qualified Immunity

7             "Qualified immunity is applicable unless the official's

8    conduct violated a clearly established constitutional right."

9    Pearson v. Callahan, 555 U.S. 223, 232 (2009).  "The relevant,

10   dispositive inquiry in determining whether a right is clearly

11   established is whether it would be clear to a reasonable officer

12   that his conduct was unlawful in the situation he confronted."

13   Saucier v. Katz, 533 U.S. 194, 202 (2001).

14            Bradley argues perfunctorily that he is entitled to

15   qualified immunity but fails to present any argument concerning

16   why the rights at issue here were not "clearly established" under

17   the applicable standard.  Accordingly, he has not met his burden

18   of persuasion and qualified immunity will be denied.

19                2.    State Law Claims

20                     a.    Firefighters Procedural Bill of Rights Act

21            Plaintiff's fourth claim alleges violation of several

22   provisions of the California Firefighters Procedural Bill of

23   Rights Act, Cal. Gov't Code § 3252 et seq.  This statute sets

24   forth a hodgepodge of procedural rights, which for unexplained

25   reasons apply only to firefighters.[4]  Needless to say, if this

26   _____

27        [4]    For example, plaintiff pleads the provisions of the Act
     which provide (1) that "no firefighter shall be prohibited from
     engaging, or be coerced or required to engage, in political
28   activity," Cal. Gov't Code § 3252(a); (2) that "[a] firefighter

1  claim in its entirety remains in the case it will ultimately

2  convert the trial from an inquiry into whether defendants

3  deprived plaintiff of his constitutional rights under the First

4  Amendment into an exposition of whether plaintiff was accorded

5  all of the procedural amenities the California legislature has

6  conferred upon him as a firefighter.

7           Bradley and the Fire Authority do not address all

8  statutory provisions relied upon by plaintiff.  In particular,

9  they do not appear to address the requirement under § 3254(f) to

10  provide written notice within 30 days of any decision to impose

11  discipline.  (See Bradley MSJ at 28-32; Fire Authority MSJ at 28-

12  32.)

13          With respect to the administrative appeal process

14  requirement under § 3254(b), defendants argue that because

15  plaintiff was an at-will employee, he possessed no administrative

16

17  shall not be subjected to punitive action, or denied promotion,
   or be threatened with that treatment, because of the lawful
18  exercise of the rights granted under this chapter, or the
   exercise of any rights under any existing administrative
19  grievance procedure," Cal. Gov't Code § 3254(a); (3) that
   "[p]unitive action . . . shall not be undertaken by any employing
20  department or licensing or certifying agency against any
   firefighter who has successfully completed the probationary
21  period without providing the firefighter with an opportunity for
   administrative appeal," Cal. Gov't Code § 3254(b); and (4) that
22  "[i]f, after investigation and any predisciplinary response or
   procedure, the employing department or licensing or certifying
23  agency decides to impose discipline, that agency shall notify the
   firefighter in writing of its decision to impose discipline
24  within 30 days of its decision, but not less than 48 hours prior
   to imposing the discipline," Cal. Gov't Code § 3254(f).  In
25  opposition to the motions, plaintiff also argues that he
   maintains a claim under a separate provision of the Firefighters
26  Procedural Bill of Rights Act, Cal. Gov't Code § 3254(d).
   However, plaintiff did not plead his claim under that section.
27  (See TAC ¶ 153.)

28

13

1    appeal rights.  However, defendants have not cited, nor is the

2    court aware of, any evidence or authority indicating that

3    plaintiff's at-will status terminated his statutory rights under

4    the Firefighters Procedural Bill of Rights Act.  See County of

5    Riverside v. Superior Ct., 27 Cal. 4th 793, 806-07 (2002)

6    (analogous Public Safety Officers Procedural Bill of Rights Act

7    "is, like many other statutory schemes enacted for the protection

8    of a class of employees, not subject to blanket waiver," and

9    therefore waiver of rights under Bill of Rights Act must be "a

10   voluntary and knowing act done with sufficient awareness of the

11   relevant circumstances and likely consequences"); Vincent v. City

12   of Cal. City, No. 1:18-cv-00549 LJO JLT, 2018 WL 3524621, at *5

13   (E.D. Cal. July 20, 2018) (assuming Firefighters Procedural Bill

14   of Rights Act applied to "at-will management employee").

15          Further, with respect to the requirement under §

16   3252(a) that firefighters not be prohibited from or coerced into

17   engaging in political activity, there is a genuine dispute of

18   material fact precluding summary judgment.  For instance, there

19   is evidence suggesting that Bradley pressured plaintiff into

20   trying to convince Ms. Vargas to stop questioning Bradley's plan

21   in her role as city councilor.  (See Patrick Vargas Dep. at

22   105:20-108:12, 140:11-22.)

23          The court will not, and need not, address all of the

24   portions of the Act pled by plaintiff, but for the reasons

25   discussed above, Bradley and the SSJC Fire Authority's motions

26   for summary judgment on the fourth claim under the Firefighters

27   Procedural Bill of Rights Act will be denied.

28

                                  14

1                    b.   Cal. Labor Code § 98.6

2               Bradley and the SSJC Fire Authority argue that they are

3    entitled to statutory immunity under California Government Code §

4    820.2, which provides that "a public employee is not liable for

5    an injury resulting from his act or omission where the act or

6    omission was the result of the exercise of the discretion vested

7    in him, whether or not such discretion be abused"; and California

8    Government Code § 815.2(b), which provides immunity to a public

9    entity for the actions of an employee who is himself immune from

10   liability.  "[T]he burden rests with government defendants to

11   demonstrate that they are entitled to § 820.2 immunity for a

12   specific policy decision made by an employee who consciously

13   balanced the decision's risks and benefits."  Hernandez v. County

14   of Tulare, 666 F.3d 631, 640 (9th Cir. 2012) (citing Johnson v.

15   State, 69 Cal. 2d 782, 795 n.8 (1968)).  Bradley and the Fire

16   Authority have entirely failed to satisfy this burden.  They

17   merely state in conclusory fashion that they are entitled to

18   statutory immunity, but do not engage in any analysis.

19   Accordingly, immunity under § 820.2 (and derivative immunity

20   under § 815.2(b)) will not be granted.

21              Plaintiff's claim under § 98.6 is premised upon the

22   alleged retaliation for plaintiff's exercise of his First

23   Amendment rights.  (See TAC ¶ 169; Fire Authority Opp'n at 31.)

24   See also Grinzi v. San Diego Hospice Corp., 120 Cal. App. 4th 72,

25   86 (2004) (discussing claim under § 98.6 premised on violation of

26   a constitutional right); Napear v. Bonneville Int'l Corp., 669 F.

27   Supp. 3d 948, 966 n.7 (E.D. Cal. 2023) (Drozd, J.) (same).  As

28   explained above, plaintiff's First Amendment claims survive

                                  15

1    summary judgment.  Thus, plaintiff's § 98.6 claim, premised on

2    the alleged violation of his First Amendment rights, similarly

3    survives summary judgment, and the court will deny Bradley and

4    the Fire Authority's motions as to that claim.

5         B.    The City

6         Plaintiff does not oppose the City's request for

7    summary judgment on the third claim for procedural due process

8    and fifth claim under Labor Code § 98.6.  (See City Opp'n (Docket

9    No. 104) at 45.)  Accordingly, summary judgment in the City's

10   favor will be granted on the third and fifth claims.

11        In contrast to Bradley and the SSJC Fire Authority, the

12   City clearly cannot be held liable on any of plaintiff's

13   remaining claims.  With respect to the § 1983 claims, Bradley was

14   not a final policymaker for the City under Monell.  The City of

15   Tracy Municipal Code establishes that the City Manager has "the

16   power to control, order, and give directions to all heads of

17   departments and to subordinate officers and employees of the

18   City."  City of Tracy Mun. Code § 2.08.060.  The City's Personnel

19   Rules designate the City Manager and Human Resources Director as

20   the officials ultimately responsible for various personnel

21   matters, including disciplinary action.  (See Ex. 31 to Murdaugh

22   Dep. at 1-3, 35-39.)  Bradley therefore was not a final

23   policymaker for the City.  See Ellins v. City of Sierra Madre,

24   710 F.3d 1049, 1066 (9th Cir. 2013) (municipal code provision and

25   personnel rules delegating employment decisions to city manager

26   established that city manager was final policymaker with respect

27   to employment decisions).

28        Further, Bradley's employment agreement was with the

16

1  SSJC Fire Authority and he reported to the Fire Authority's

2  Board, not to the City. (See Bradley Dep. at 363:3-9; Ex. 6 to

3  Bradley Dep.) And based on the evidence already discussed above,

4  Bradley -- not any City official -- was responsible for the

5  alleged violations. Bradley allegedly expressed opposition to

6  plaintiff's perceived speech. (See Patrick Vargas Dep. at

7  105:20-106:9.) Bradley allegedly defied the limitations put in

8  place by City policy and the City's Human Resources Director in

9  order to influence the harassment investigation. (See Murdaugh

10  Dep. at 132:18-134:22, 180:16-181:4; Ex. 22 to Murdaugh Dep. at

11  3.) Bradley chose to place plaintiff on administrative leave

12  during that investigation, only informing the City after deciding

13  on that course of action. (See Ex. 20 to Bradley Dep.; Murdaugh

14  Dep. at 150:9-151:23.)

15      City officials apparently tried to stymie Bradley's

16  influence and ensure plaintiff was treated fairly by

17  commissioning an independent investigation into the harassment

18  investigation and, based on the results thereof, ordered Bradley

19  to remove plaintiff from administrative leave and allow him to

20  return to work. (See Exs. 20-22 to Murdaugh Dep.; Murdaugh Dep.

21  at 132:19-134:22, 167:5-17, 195:24-199:10, 203:22-207:25, 213:19-

22  214:23; Bradley Dep. at 386:10-24.) Bradley disregarded the

23  City's instructions and terminated plaintiff shortly after the

24  Fire Authority became plaintiff's employer of record. (See

25  Bradley Dep. at 386:10-387:16, 395:13-396:24; Murdaugh Dep. at

26  27:13-28:14.)

27      While the City did initiate the investigations in

28  response to fraud and harassment allegations and made a

recommendation for a written reprimand following the conclusion of the final investigation (see Ex. 21 to Murdaugh Dep.), there is no indication that the City did so in a biased manner or violated applicable procedural protections.  The City cannot be held responsible for Bradley's actions, which often appeared to contradict City policy and orders, merely because Bradley for a short period of time nominally remained an employee for purposes of the transition process for the newly autonomous SSJC Fire Authority.  Accordingly, the City's motion for summary judgment will be granted in its entirety.

IT IS THEREFORE ORDERED that the City of Tracy's motion for summary judgment (Docket No. 99) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Randall Bradley's motion for summary judgment (Docket No. 101) and the South San Joaquin County Fire Authority's motion for summary judgment (Docket No. 102) be, and the same hereby are, GRANTED as to the third claim for deprivation of procedural due process under § 1983.  The motions are DENIED in all other respects.

Dated:  February 21, 2025

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

18